THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. RODNEY K. WILSON, an Individual,     ) | |
| )  | |
| Plaintiff,     ) | |
| )  | Case No. CIV-14-1265-C |
| v.     ) | |
| )  | |
| 2. THE CITY OF STILLWATER,     ) | |
| OKLAHOMA, a municipal corporation,     ) | |
| )  | |
| Defendant.     ) | |

## COMPLAINT

The Plaintiff, Rodney K. Wilson ("Wilson"), for his claim against the Defendant,

The City of Stillwater, Oklahoma (the "City"), alleges and states as follows:

### I. PARTIES

1.     Wilson is an adult resident of Payne County, Oklahoma.

2.      The City is a municipal corporation organized and existing under the laws

of Oklahoma, and it is located in Payne County, Oklahoma.

### II. JURISDICTION AND VENUE

3.     Wilson's claim is for age discrimination under the Age Discrimination in

Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA") and the

Oklahoma Anti-Discrimination Act, 25 Okla. Stat. § 1101 et seq., as amended

("OADA").

4.     Jurisdiction over Wilson's claim against the City under ADEA is vested in this Court under 28 U.S.C. § 1331.  This Court has jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

5.     The actions complained of occurred in Payne County, Oklahoma, and the City may be served in that County.

6.     Wilson was working for the City in Payne County, Oklahoma, at the time of his termination.

7.     Payne County is within the Western District of Oklahoma, and venue is therefore proper in this Court under 29 U.S.C. § 1391(b).

8.     Wilson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued to Wilson a Right to Sue letter on September 17, 2014.  Accordingly, all administrative remedies have been exhausted and the filing of this Complaint is both proper and timely.

9.     The City is an employer who employs at least 20 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

### III.  STATEMENT OF FACTS

10.     Wilson began employment with the City as a part-time seasonal employee (while he was a student) in 1978.

11.     Wilson became a full-time employee of the City in 1985, and he remained an employee of the City for the next almost 30 years until he was fired by the City on March 10, 2014.

12.     At the time of his termination, Wilson was 51 years old.

13.     During his tenure with the City, almost all of Wilson's evaluations were "outstanding" or "exceptional."

14.     Wilson was promoted many times by the City.

15.     Wilson started as an hourly park maintenance employee, but by the end of his employment, Wilson had become a salaried employee who at various times had titles such as Park Manager and Director.

16.     From 2008 through early 2013, Wilson was the Parks Operations Manager.

17.     In March 2013, the City solicited Wilson to move from his Park Operations job to City Hall to become the City's new Training Coordinator.  At the urging of the City, Wilson accepted the transfer.

18.     The City issued a press release, prepared by Sherri Fletcher, the City's Communications and Publications Director, regarding Wilson's acceptance of the Training Coordinator position.  The press release was published in the May 5, 2013 Sunday edition of the <u>Stillwater NewsPress</u>, which is by far the Payne County newspaper with the largest circulation.  A true and correct copy of the City's press release is attached hereto as Exhibit "1."  All of the statements in the press release regarding Wilson's education (bachelor's and master's degrees), many promotions, and great and dedicated service as an employee of the City are true, and they are incorporated herein by reference, including but not limited to the quotes attributed to John McClenny, Wilson's immediate supervisor.

19.     At no time did the City, or any of Wilson's supervisors or managers, tell Wilson that the Training Coordinator position was a temporary job that would be eliminated in less than one year.  Similarly, the City's press release (Exhibit "1") said nothing about the position being a temporary one.

20.     If the City would have told Wilson that the Training Coordinator position was a temporary one, he would have declined the transfer and remained as the Park Operations Manager for the City.

21.     In September 2013, Lisa Jones ("Jones"), who is under 40 years of age, applied for a Human Relations job with the City.  The City did not hire Jones for the Human Relations job for which she applied but instead inexplicably hired her for a job for which she did not apply – Training Coordinator – the same job that had been given to Wilson a few months earlier when the City lured him out of the field and into City Hall.

22.     Jones, who was much younger than Wilson and much less experienced and qualified, was hired by the City at a substantially lower pay rate than Wilson, in part because Wilson's longevity with the City, multiple promotions, and consistently outstanding evaluations had allowed him to become at the time of his firing one of the City's highest paid employees, especially among those in the Parks Department.  Also, Wilson had earned and was entitled to many more job-related benefits than most employees, including Jones.

23.     The hiring of Jones raised a red flag with Wilson, but two members of the City's administration team went to Wilson's office and told him not to worry about the

hiring of Jones.  Wilson was even told at that time by his supervisor, John McClenny, that he would always have a position with the City.

24.     On or about March 10, 2014, Wilson was discharged from his employment with the City.

25.     John McClenny, Wilson's immediate supervisor, and Christy Luper, the City's HR Manager, told Wilson that although he had done nothing wrong or unsatisfactorily, he was being fired simply because the City no longer had a job for him after almost 30 years of employment.

26.     However, in contrast to McClenny's and Luper's statements, the termination letter provided to Wilson makes no mention of the elimination of his position or having no job available.  Instead, it (a copy of which is attached hereto as Exhibit "2") says Wilson was terminated "for the good of the service."

27.     The reasons given to Wilson for his firing, which contradict each other in any event, were pretextual.  The City had already hired Jones into the Training Coordinator position (although Wilson was lied to at the time about that) and there were multiple other jobs at the City for which Wilson was abundantly qualified that were filled in the months before his termination.

28.     The motivating factor in the firing of Wilson was his age.

29.     All adverse actions described herein and taken by the City against Wilson, including without limitation his firing, were done intentionally, willfully, and in reckless disregard for the rights of Wilson.  Upon information and belief, the City has written policies stating that it will not discriminate against its employees because of age.

5

Nonetheless, the City willfully and knowingly took adverse employment-related actions against Wilson because of his age.

30.     At the time of his discharge, Wilson was paid a salary at the rate of $67,059.20 per year.   In addition, Wilson received fringe benefits, including without limitation, medical and retirement benefits.

31.     As a result of the City's wrongful actions, Wilson has suffered a loss of employment; loss of career path and seniority; and loss of compensation and benefits. The total amount of such losses and damages exceed $75,000.00.

### IV.  FIRST CLAIM - VIOLATION OF ADEA

32.     Wilson incorporates herein by reference Paragraphs 1-31 above.

33.     Wilson was over the age of 40 at the time he was fired by the City.

34.     Wilson was fully qualified to perform his assigned job duties, and he was performing those duties without any complaint by the City.   Wilson's Training Coordinator job was assigned to a significantly younger employee, Jones, to whom the City paid a much lower salary and lesser benefits.

35.     The determining factor in the City's adverse action toward Wilson was his age.   As a result of the City's adverse actions, Wilson suffered the losses and damages alleged above.

36.     The City's violations of the ADEA were willful.

37.     Wilson is entitled to all remedies and relief afforded by the ADEA, including without limitation back pay, liquidated damages, front pay, costs, expenses, and

a reasonable attorney's fee in bringing this action, as well as pre-judgment and post-judgment interest.

### V.  SECOND CLAIM - VIOLATION OF OADA

38.    Wilson incorporates herein by reference Paragraphs 1-37 above.

39.    Wilson is protected under the OADA from employment discrimination based upon age.

40.    The City discriminated against Wilson by terminating him because of his age in violation of the OADA.  As a result, Wilson sustained the losses and damages described above.

41.    The City's actions in violating the OADA were intentional, willful, malicious, and in reckless disregard for Wilson's rights thereunder.

42.    Wilson is entitled to all remedies and relief provided under the OADA for age discrimination in employment.

### V.  JURY TRIAL DEMANDED

43.    Wilson incorporates herein by reference Paragraphs 1-42 above.

44.    Wilson is entitled to a jury trial for his federal and state law claims, and hereby requests a jury trial.

WHEREFORE, Wilson requests that judgment be granted in his favor and against the City on all claims, that the Court grant Wilson all available compensatory damages, pre- and post-judgment interest, costs, attorneys' fees, and any other legal or equitable relief allowed by law.

Respectfully submitted,

s/Ryan S. Wilson
Ryan S. Wilson, OBA #14340
HARTZOG CONGER CASON & NEVILLE
201 Robert S. Kerr, Suite 1600
Oklahoma City, Oklahoma  73102
Telephone: (405) 235-7000
Facsimile: (405) 996-3403
rwilson@hartzoglaw.com

**ATTORNEY FOR PLAINTIFF**